The next case today is John Doe v. Stonehill College, Inc. Appeal Number 21-1227. Attorney Woodcock, please go ahead and introduce yourself for the record to proceed. May it please the Court, Timothy Woodcock for Appellant John Doe. And with the Court's permission, I would like to reserve two minutes of rebuttal time. Yes. May it please the Court. As the Court is aware, this case involves an order on a motion to dismiss, in which all of the claims that John Doe had raised in his complaint were dismissed with prejudice. I would like to address two categories of claims in particular for the Court today. One are those that are based on contract breaches and those that are based on Title IX claims. With respect to the contract, as the Court is aware, we have a policy here that Stonehill issued that created an inquisitorial system of adjudication, investigation, and resolution of these types of claims. There are broad standards within that contract that I think are highly pertinent here, including a description in the contract itself that thoroughness and fairness were paramount. These are the overarching qualities of the investigation students have a right to expect. Beyond that, there were representations as to the high level of expertise of people who were hired to do these particular kinds of claims. And as I think we are all aware, these kinds of claims where they involve sexual intimacy, typically there are only two witnesses to these claims, and therefore you have constant issues of credibility that divide the parties. Therefore, there are two aspects of the training I think that would have to come to the fore and you would expect to see in any investigation. One is the investigators have the sensitivity to be able to deal with people who are speaking about intimate aspects of their lives and get information from them so that they can make an informed decision. Not to respect, as it were, a complainant's statement that she doesn't want to talk about it, but instead to find a way to break down that barrier and obtain the necessary information, both for her sake as well as for the respondent. Within this, and in this system- Mr. McCoy, I might ask you. I want to address your question on the contract issue now. You pointed out the context for this as the district court's disposition of a motion to dismiss. In evaluating the basic fairness issues, reasonable expectation issues on the contract claim, how did the district court, and please be as specific as you can on this, how did the district court go awry in not evaluating the allegations in your complaint, consistent with the motion to dismiss standard in dismissing with prejudice your breach of contract claim? Where did the district court go awry? On a number of points, Your Honor. One that I was addressing at this point was the lack of the investigators actually conducting any kind of a detailed inquiry, and I would say an iterative inquiry into the circumstances of this incident, as well as into the sexual history of these two individuals who did have a prior sexual history and did establish ways of communicating. And I might add in that regard, Your Honor, there are a series of specific contract breaches that come out of this. The whole system was set up so that both parties would have an opportunity to review the facts that the investigators had found. Those were all supposed to be laid out in front of the parties. They had an opportunity to review them. The way this was set up, there were several facts, and some we dispute quite vigorously, that were not included in the first part that John Doe never got to see. He did not get to see them until after he had been told he was going to be dismissed from the college. So, for example, Jane Roe, somewhere in the course of the investigation, according to the Part 2 of the report, said she had been incapacitated, a far higher degree of intoxication than she had let on earlier. Why was that? Where did that come from? John Doe found that only after he had been dismissed. Roe said that in prior sexual interactions, Roe verbally had said yes to Doe. He was not told that. That is not the nature of their relationship, and I might add in that respect, Your Honor, the court said in treating that particular aspect of the claim, on page 17 of the decision, that the court said, assuming without deciding that Doe should have gotten this information, that means the court is assuming there is a contract breach, and we still have the case dismissed. Okay, well, so the court acknowledged that this was not a perfect process. There are mistakes made, and the court acknowledged that there has to be, in order to violate the contract, those mistakes have to be prejudicial in some material way. What prevented the court from making the judgment in a motion to dismiss context that, okay, I will accept that these mistakes were made. The allegations of the complaint alleged that these mistakes were made, but they did not cause significant prejudice. Why couldn't the court do that? Because the court ended up making factual determinations along the way. I mean, when you have a breach of contract claim, the question is, is there a breach? There is always a question with respect to the breach. Is it material? Are there damages that flow from it? And so on and so forth. But in this instance, we are alleging in the first instance that there is a breach. And, of course, as the court is well aware, we don't have an answer having been filed yet. So we don't know what Stonehill would say if it were forced to actually respond to these allegations. I would note in one particular, Your Honor, and I would like to emphasize this, because the court did, the district court did as well, and that is there was an exchange of text messages of which the court is aware following the incident. And then somewhere in the investigation, we don't know when, Jane Rowe said, well, the morning after I ran into witness number two, and we think she said that. I mean, this could have come from witness number two. The report is not clear. And she said, well, how were things last night? And she said, that is Jane Rowe said, it's not okay. Now, the investigators placed an enormous amount of weight on that. There's no question when you look at part two, they said, well, that's, you know, an arguably close contemporaneous sort of fresh complaint type argument, or at least observation. And they placed an enormous amount of weight on that. The court then applied the rules of evidence to determine that even though that was a breach, it was cumulative and therefore of no consequence. That's not the kind of analysis that occurs at a 12B6 level. How does the court know that it was cumulative? Cumulative evidence can be very, very important, very supportive. And frankly, when you look at part two of the report, that's what the investigators found. They placed great weight on it. For them, it was cumulative in a way that was prejudicial to John Doe. He was entitled to that information. Because I know your time is short. On the Title IX claim, where what's critical is your ability to show that the decision, the procedures that preceded the decision, if they were defective in some way, that all of that was motivated by gender discrimination. Now, what are the plausible allegations in this complaint that would support a finding of gender discrimination that the district court failed to account for in dismissing that claim? Your Honor, we alleged that there was an Office of Civil Rights Department of Education investigation ongoing as this complaint was being considered. We know from published reports that that started sometime in March of 2016. Stonehill has not answered, so we don't know for certain whether it was still ongoing. But the court relying on the Dayton case coming out of the district court in Ohio concluded that because in that case, the OCR investigation had been completed for two years by the time the incident occurred and there was actually a written description of what the terms were, which were unrelated to the underlying investigation. What did the district court say about the relevance of that investigation by the Office of Civil Rights? What did it say about the relevance of that? Your Honor, what the court did as I read the decision, the court essentially cited the Dayton decision in Ohio as deciding the issue. In other words, this investigation in the Dayton case had been concluded by two years by the time the investigation began on the Dayton matter and the terms of the agreement, which were public, were unrelated to the underlying investigation. We know from the news reports that these are related. The news reports say that Stonehill was under investigation for not sufficiently being attentive to the complaints of female complainants and there was adverse publicity from at least two sources with respect to that. We believe that investigation was still ongoing. They were still under the OCR microscope at that point, but we don't know for sure and neither did the U.S. District Court know that that investigation had concluded or what the result was. We won't know that until Stonehill answers. All we're talking about at this point, we're not saying that we can prove this to a certainty. All we say is that's a reasonable inference. I might add with respect to each of these contract breaches, there was a point at which Stonehill said, well, that omission of the reference to witness number two from part one, that was a mistake. Well, there you have actually Stonehill coming forward and suggesting a motivation. They don't get to do that at this point. This is just the 12B6 level, but the fact that they felt they had to offer an explanation for the breach of contract raises the question, why did they do it and why did they do it? The court has this long footnote at the beginning of this decision. I mean, it's very sensitive to what it's allowed to do on a motion to dismiss, and it talks about all of the documents that it thinks it is entitled to consider, which includes exhibits attached to your complaint, documents, I gather, submitted in support of the motion to dismiss your response to that. I mean, it sounds like the district court was pretty close to treating this as a summary judgment proceeding and not a motion to dismiss. Did the court go awry in considering documents that are not properly before it on a motion to dismiss? No, we don't dispute that the documents were properly before the court. Neither party objected to the documents. There was no disagreement about what they said, so we felt that in the context of a 12B6 motion it was appropriate for the court to consider them. We do think, however, that even if it were treated as a summary judgment motion, which we didn't ask for and we didn't want, still the factual inferences should be drawn in favor of the nonmoving party, which we were. We really didn't get the benefit of those inferences under either standard. But because this was a – to continue with the Title IX aspect of this, we don't have to present the inference that supports a discriminatory motive. All it has to be is a permissible motive. We have to allege a sufficient basis for it to allow for that inference to be a plausible inference, and it doesn't even have to be the most plausible inference. It can be more remote or even the least plausible. And so I do think the OCR investigation, the adverse publicity that attended that, which is also part of the record, as well as the failure of the investigators to actually probe the details of the complainant's allegations. And I would like to make this point, Your Honor. In discussing the withheld information from John Doe that Jane Roe said that he and she always communicated verbally when consent was concerned, under that aspect of this, that was withheld from us. And we should have had the opportunity to provide more context of that. And when the court cited that, the court cited a single paragraph in our complaint. And yet in our complaint, the allegation as to their sexual history went from paragraph 35 to 46, and it did not say that they communicated verbally their consent. What he said was a combination of physical actions and verbal communications, not verbal communication of consent. And that's made clear by the allegations. You quickly addressed this recantation issue, which seems quite important. I mean, I gather it's your contention that she initially described their prior relationship as more of a social relationship and did not have the sexual component. Then she later acknowledges that it did have the sexual component. And if I understand you correctly, you say that when the final report is prepared, the circumstances that prompted what you described as a recantation were not included in the report, so that it would seem as if she had chosen to be candid on her own initiative as opposed to responding to some evidence that would prompt her to acknowledge that. Can you just clarify what your argument is there? Yes, Your Honor, thank you for that question. Jane Rowe was interviewed twice. When John Delwin, his attorney, got Part 1, they had to, as the U.S. District Court said, they had to surmise that she had been interviewed twice because the investigators did not admit that. It looks as though, as you read that part of the report, that in the second interview, apparently she was confronted with John Doe having asserted to the investigators that they did have a very vigorous prior incident social history and a sexual history of the same degree of intimacy. So then the way the report was framed, the investigators said, well, she clarified that their relationship had been social and had included the same level of sexual intimacy. And so when John Doe and his attorney got that information, the attorney wrote to the investigators and said, well, look, you need to clarify that. You need to say that she admitted that only after being confronted with John Doe's representation to the contrary. And the investigators said, oh, okay, we'll do that. And then they did not. So once again, you look at these whole series of breaches of contract terms, and you have to ask yourself the question, well, why? And when you're asking the question why, Stonehill might say, well, that was a mistake. But among the realm of explanations is discriminatory intent, that they are trying to put this particular complainant in the best light. And even having been confronted with this and having represented that they will make that clarification, they don't. And keep in mind, in this system, this is a very closed-loop system, the decision-maker is not the Title IX investigators. So the decision-maker is quite dependent on how they characterize things, and the decision-maker is simply looking at their report and making a decision. The investigator would know that. The decision-maker knows that. Mr. Woodcock? Go ahead. You've reserved some time. I think we're going to have to end there. Oh, thank you. Thank you, Ronald. If you would mute your audio and video. Yes, thank you. And Mr. Iacquinta. Good morning, Your Honors. Christopher Iacquinto of Holland and Knight, on behalf of Stonehill College. May it please the Court. Judge Lopez, I'd like to go a little bit out of order and just start with a question you asked for the beginning of opposing counsel's argument, in which you said that we acknowledge that perhaps mistakes were made in the conduct of the process, but they need to be prejudicial in some material way. And that's precisely right, and I think that goes to the issue. Opposing counsel repeatedly used the term breach, but that's a legal conclusion. And in the contract case law involving students and schools, you have – it's a two-part analysis as to whether or not there was a violation of a student's reasonable expectations or a violation of basic fairness under Massachusetts law. It's not was every I was dotted and every T crossed as it relates to the policy. And so I just want to reframe the argument because the policy does not entitle a student to reasonably expect a perfect investigation, as you intimated. It permits minor deviations, which is a quote, and prohibits only those procedural failures that, quote, result in significant prejudice such that it impacts the outcome, close quote. The claimed deficiencies with Stonehill's investigation here do not plausibly rise to that level. Counsel, why is it on a motion to dismiss with respect to the contract claim only at this point? Why is the district court judge permitted to conclude that these breaches were not material in a prejudicial way? Doesn't that require some understanding of the investigative process, some understanding of the way in which those mistakes perhaps affected the ultimate decisions that were made? And how can you make all of those judgments on a motion to dismiss where you're required to view the allegations in a way that's most favorable to the plaintiff and draw the inferences that are most favorable to the plaintiff? I mean, how can you make that judgment on a motion to dismiss the prejudicial judgment? Well, I have two answers to that, Your Honor. As a matter of precedent, and obviously the contract is governed by Massachusetts law, the Supreme Judicial Court in Cher back in 2000 engaged in the same very type of analysis at the motion to dismiss phase. So it's presumptively proper for a court to assess the reasonable expectations of a student from reading the plain language of the contract. In addition to that, I would add, given the length of the allegations in this complaint, 120 pages, 570 paragraphs, in addition to the documentary record that the investigators compiled, the draft reports that were prepared and submitted with exhibits, and the documentary evidence gathered, it's the plausible inferences from the totality of what was before the court, not one allegation or one paragraph in isolation. And so I think taking those two things together, courts acknowledge that the breach of contract analysis, reasonable expectations, and basic fairness is an uncertain and elastic inquiry. But that doesn't mean it's impermissible at the motion to dismiss phase. And I think the court conducted it appropriately here without providing a weight of the evidence. Rather, it took the entirety of the allegations and asked whether or not it comported with reasonable expectations of the language in the policy, which we submit. Counsel, let me ask you, I'm familiar with the cases from the Massachusetts Supreme Judicial Court, as well from the First Circuit. But when I look at the contract, particularly for Stonehill, doesn't this contract, yeah, this contract could be limited to those cases. But it seems to me that this contract expands what is required when these issues come up. And wouldn't that be an issue of material fact? Again, there is the precedent, but it would seem that the question is twofold. Doesn't this contract go beyond the typical contracts in the cases cited by the Supreme Judicial Court and the First Circuit? And if so, again, doesn't that at least survive the 12B6 standard law for some discovery? Judge Helpe, if I understand your question, I believe you're getting at Doe's argument that the policy uses words like thorough and impartial. And that bestowed upon Stonehill some additional obligations. And that's wrong for three reasons. The first is, in support of that argument, Doe seeks to have this court read into Stonehill's policy through those two words, federal due process jurisprudence from HADAC. But HADAC concerned federal due process for public schools, not private schools like Stonehill. Second, those two words, thorough and impartial, were used by the Department of Education as far back as 2011 in their Dear Colleague letter. They described any Title IX investigations that were going to occur as required to be thorough and impartial. In so doing, Stonehill was simply reiterating that regulatory guidance, which does not equate to de facto due process. Otherwise, cases like this court's decision in BC1 and BC2 from 2018 and 2019 couldn't stand. The third reason that that argument is wrong is because on the face of HADAC, due process requires notice and an opportunity to be heard, which is meant to mean some type of hearing. Relying on HADAC, Doe seeks to take thorough and impartial and backdoor a due process requirement to private schools. But that's the type of argument that this court rejected just two years ago. Obviously, Judge Lopez, as you know, in the second Boston College case from 2019. Let me ask you, counsel. These questions go both to the contract and the Title IX claim. There are allegations in this complaint that refer to statements, emails really, that the plaintiff sent the morning after this event in which he expresses the kind of apology that he didn't understand the situation that he messed up and so forth. And the district court is quite explicit in treating those as admissions that he was not acting in accordance with what the consent policy requires. And the complaint says, in effect, no, no, those were not true. Their version is, and I think this is apparent from the complaint, is that he felt badly about what happened. He was worried about what happened. He was perhaps trying to make her feel better and acknowledging his culpability. What entitled the district court on a motion to dismiss to treat those as admissions? That seems, frankly, entirely incompatible with the motion to dismiss. The district court views those statements exactly as the defendant would like the court to view it as admissions rather than an attempt to try to make the complainant feel better. What allowed the court to do that? Understood. And I don't agree with that characterization, Your Honor, that the district court explicitly stated that these were admissions in his order. And I'm looking now at page 3, which is appendix 4, excuse me, page 23, which is appendix 401 of his order. And after going through the sequence of events, he says Doe admitted misconduct in writing, which is, which is true. What does that mean? But the statements saying I was being a drunken idiot, quote, I know I fucked up, quote, I totally misread the situation, quote, those those. The question here isn't. I'm going to use the word innocence or does culpability under the policy. The question here is that don't did Stonehill reasonably, reasonably follow its policy without gender bias. And the the statements that were before Stonehill were certainly inculpatory statements. Yes. In his complaint, he claims that they were untrue. But regardless, before Stonehill, you have those messages which were objective facts. They were statements. And the court says at the end of that paragraph on page 23, these statements and pieces of evidence are the type of objective facts that form the basis of misconduct determinations. So it wasn't relying on the truth or falsity of the admission. But the fact that the statements were made, the statements were before the investigators, and those constituted the type of objective facts that could be taken into consideration in Stonehill's process. OK, what about the district court's apparent willingness to accept Stonehill's acknowledgement that a defect in the investigation? And I think this refers to the fact that that Doe was not informed what Witness 2 had said. He wasn't told about that.  The district court seems to accept that it was a mistake. Your opponent is suggesting, well, no, we would we think that that is further evidence that this was a biased investigation. They think that a fair inference of discrimination can be drawn from that. What entitles the district court to accept the defendant's version that was just an innocent mistake as opposed to evidence of discrimination? So I have three answers to that, if you'll permit me. The first is, if I just assume your point to be true, and I don't, as I'll explain in answers two and three, but for the first one, that may be evidence of bias. Let's assume that to be true, but it's wholly disconnected from gender. There's no allegations in the complaint tying that to Doe's gender as a male. That's first. Second, I would say, excuse me, that it's not the recognition that it was a mistake. But it's simply the fact that Witness 2's statement was before Doe, excuse me, the concept of Witness 2's statement, the underlying evidence, meaning Roe had said the next morning that wasn't okay. That concept was before Doe and his counsel in the draft report that they reviewed telephonically and in the written report that they were provided at the end of January, on January 23rd. And so taken together, regardless of how you characterize that omission in the report itself, the fact remains that the evidence was before Doe and his counsel during the investigative process, and they were permitted to respond to it. Your opponent says, yeah, well, of course, that was cumulative. And so if it's cumulative, it's no big deal. But maybe before a fact finder assessing this entire scenario, that fact finder might not think that it's just cumulative. And in that sense, no big deal. What allowed the district court a motion to dismiss to make that judgment? Well, I don't think it did make that judgment because the question isn't whether a reasonable fact finder could disagree as to what happened on November 18th. It's whether Stonehill followed its policy, which comported with Title IX, and it did. So it satisfies Title IX, and whether it satisfied Doe's reasonable expectations and basic fairness. And I'll just read quickly from Appendix 191, which explains the iterative investigative process. It states that the purpose of that meeting, reviewing the draft report before it's completed, is to offer a final opportunity to the parties to ensure both have been afforded the opportunity to present all relevant witnesses and evidence. And the fact remains that the evidence regarding Roe's statements that morning, that it wasn't okay and that it wasn't consensual, was before him. Yes, he didn't know that there was an additional source as to witness number two, but the terms of the policy and the terms of that process, Stonehill complied with it. And through the lens of the minor deviations being permissible, because Doe did raise this issue on appeal. He lodged a 38-page appeal with the vice president of student affairs. And Doe raised this issue on appeal. It was considered by Stonehill, and it was determined not to materially impact the outcome. Your Honor, I'm certain I'm over time, so unless there are additional questions. Thank you, Mr. Aricanto. Thank you. If you would mute your audio and video. Mr. Woodcock. Your Honor, briefly in rebuttal here. With respect to Haydick, I understand that Haydick was a due process case, but it spoke more broadly about the iterative process that makes an effective inquisitorial system work. And I think that, coupled with the contractual guarantees of thoroughness and fairness, make the conclusions that Haydick drew with respect to the inquisitorial or the essential elements of an inquisitorial process applicable here. With respect to the admissions, the judge below clearly found that they were admissions, and that is how he characterized them. In fact, there was one point at which he described Doe as lying to Jane Roe. He didn't use similar language for his misrepresentations to the investigators, as opposed to the two parties involved in the incident about their social history and sexual history with John Doe. Beyond that, listening to Stonehill's counsel here, the notion of the concept having been released to John Doe, that really is a bit Orwellian, I would say. Because we do not know who actually came up with this post-incident statement with respect to that sort of corroborated what John Doe said, Jane Roe had said to him. We don't know if it was witness number two or if it was Jane Roe. If it's Jane Roe, then it's a self-serving statement. If it's witness number two, then that should have been flagged. But I would say with respect to the iterative process, if Jane Roe actually volunteered that information, if this were really a process with integrity, those investigators would have gone back to witness number two and said, did she say that? Did you have that exchange? We know they didn't because the report doesn't indicate there was anything like that. I would say in that regard, if you go to the end of part two of the report, you find the enormous weight that the investigators placed on this post-incident statement, this exchange between Jane Roe and witness number two. So it's not something that was small or immaterial. And moreover, with respect to both the decision process by Dean Piscatlo as well as the appeal to Dean Dabrowski, you can't really tell how they decided this case. All you can tell is for Piscatlo, who should have been able to pick out right away that there were factual representations in part two that were not in part one, so already he should have known, well, this is deficient. You need to go back and give John Doe another cut of this. Dabrowski actually had the appeal in front of her and could confront that fact, and she did nothing about it either. Thank you. That concludes argument in this case. Attorney Woodcock and Attorney Iacquinto, you should disconnect from the hearing at this time.